UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| RAYMOND CARTWRIGHT, | ) |
| Petitioner, | ) |
| v. | ) No.: 1:16-CV-517-CLC |
| UNITED STATES OF AMERICA, | ) |
| Respondent. | ) |

# **MEMORANDUM**

Federal inmate Raymond Cartwright has filed a motion and supplemental motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Respondent has filed a response in opposition to the motions, and Cartwright has replied. Having considered the pleadings and the record, along with the relevant law, the Court finds that it is unnecessary to hold an evidentiary hearing[1] in this matter, and the motion will be denied.

**I. BACKGROUND FACTS AND PROCEDURAL HISTORY**

A jury convicted Cartwright of possessing a firearm and ammunition as a felon in violation of 18 U.S.C. § 922(g)(1). *See United States v. Cartwright*, 221 F. App'x 438, 439-40 (6th Cir. 2007). Based on his prior Tennessee convictions for first-degree burglary, second-degree burglary, third-degree burglary, felonious escape, aggravated assault, and incest, he was deemed an armed career criminal under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), and was sentenced to 288 months' imprisonment followed by five years of supervised release [Doc. 79 in

---

[1] An evidentiary hearing is required on a § 2255 motion unless the motion, files, and record conclusively show that the prisoner is not entitled to relief. *See* 28 U.S.C. § 2255(b). It is the prisoner's ultimate burden, however, to sustain his claims by a preponderance of the evidence. *See Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). Accordingly, where "the record conclusively shows that the petitioner is entitled to no relief," a hearing is not required. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (citation omitted).

No. 1:04-CR-33; Presentence Investigation Report ("PSR") at ¶¶ 33, 38, 40, 42-43, 44-45, and 53]. *See also Cartwright*, 221 F. App'x at 440-41.

The Court of Appeals for the Sixth Circuit affirmed Cartwright's conviction and sentence on direct appeal. *Id* at 442. On December 10, 2007, the Supreme Court denied Cartwright's request for a writ of certiorari. *Cartwright v. United States*, 552 U.S. 1083 (2007).

In April 2008, Cartwright filed a § 2255 motion, which was denied as without merit in December of 2011 [*See* Doc. 172 in No. 1:04-CR-33]. In October of 2016, the Sixth Circuit authorized Cartwright to file a successive § 2255 motion challenging his armed-career criminal classification in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), which invalidated the residual clause of the ACCA as unconstitutionally vague [Docs. 189 and 193]. Multiple motions to amend and/or supplement the § 2255 motion have been filed and remain pending, but the United States has responded to the initial motion and first two supplements [*See* Docs. 3 ,4, 6, and 13]. Cartwright has filed replies to the Government's responses [*See* Docs. 5 and 14], and Cartwright has submitted a subsequent motion to amend and/or revise his petition, along with an order to show cause why he should not immediately be released [Docs. 15 and 17].[2]

During the course of this litigation, this action was stayed pending the outcome of the Sixth Circuit's decision in *Cradler v. United States*, 891 F.3d 659 (6th Cir. 2018) [Doc. 202 and 204 in No. 1:04-CR-33]. *Cradler* having been decided, the Court finds the stay should be vacated and that these matters reviewed.

## II. LEGAL STANDARD

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). A court may grant relief under 28 U.S.C. § 2255, but the statute "does not encompass all claimed

---

[2] Cartwright has also filed a motion for "habeas bail" in his criminal case [Doc. 210 in No. 1:04-CR-33].

errors in conviction and sentencing." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Rather, collateral attack limits a movant's allegations to those of constitutional or jurisdictional magnitude, or those containing factual or legal errors "so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation omitted); *see also* 28 U.S.C. § 2255(a).

### III. DISCUSSION

The ACCA requires a fifteen-year minimum sentence for a felon who unlawfully possesses a firearm after having sustained three prior convictions "for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e)(1). The statute defines a "violent felony" as "any crime punishable by imprisonment for a term exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another" (the "use-of-force clause"); (2) "is burglary, arson, or extortion, involves use of explosives" (the "enumerated-offense clause"); or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another") (the "residual clause"). 18 U.S.C. § 924(e)(2)(B).

In *Johnson v. United States*, the Supreme Court struck down the residual clause of the ACCA as unconstitutionally vague and violative of due process. *Johnson*, 135 S. Ct. at 2563. However, *Johnson* did not invalidate "the remainder of the Act's definition of a violent felony." *Id*. Therefore, for a § 2255 petitioner to obtain relief under *Johnson*, he must show that his ACCA-enhanced sentence was necessarily based on a predicate violent felony that only qualified as such under the residual clause. *See, e.g., Potter v. United States*, 887 F.3d 785, 788 (6th Cir. 6018). Accordingly, post-*Johnson*, a defendant can properly receive an ACCA-enhanced sentence based either on the statute's use-of-force or enumerated-offense clauses. *United States v. Priddy*, 808 F.3d 676, 683 (6th Cir. 2015); *see also United States v. Taylor*, 800 F.3d 701, 719 (6th Cir. 2015) (affirming ACCA sentence where prior convictions qualified under use-of-force and enumerated-offense clauses).

In evaluating whether a conviction qualifies as a predicate offense under the ACCA's enumerated-offense clause, courts apply a "categorical approach," which requires the reviewing court to compare the elements of the statute of conviction with the "generic elements" of the offense. *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016); *Descamps v. United States*, 570 U.S. 254, 257 (2013). If the statute of conviction is broader than that criminalizing the generic offense, then it cannot qualify as a violent felony, regardless of the facts comprising the offense. *See, e.g., Mathis*, 136 S. Ct. at 2248-49.

Where the statute of conviction is "divisible," in that it lists elements in the alternative to define several different variants of the crime, courts may employ a "modified categorical approach" in order to evaluate which of the alternative elements constituted the offense of conviction. *See, e.g., Mathis*, 136 S. Ct. at 2249. When considering whether the conviction qualifies as an ACCA predicate under this approach, courts may review a limited set of documents (referred to as *Shepard* documents) to determine the elements of the crime of conviction and compare that crime to the generic offense. *See id.; see also Shepard v. United States*, 125 S. Ct. 1254 (2005).

In his pleadings, Cartwright argues that his prior convictions for third-degree burglary, aggravated assault, felonious escape, and incest no longer qualify as ACCA predicates. The United States appears to concede that Cartwright's third-degree burglary, escape, and incest convictions no longer serve as ACCA predicates, but it argues that Cartwright's aggravated assault conviction and other burglary convictions are sufficient to uphold his status as an armed career criminal. The Court considers each of Cartwright's convictions in turn.

    **A.    Burglaries**

The ACCA specifically lists "burglary" as a violent felony. 18 U.S.C. § 924(e)(2)(B)(ii). An individual commits a generic burglary offense "if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or

4

remaining in, a building or structure, with intent to commit a crime." *Taylor v. United States*, 495 U.S. 575, 599 (1990). At the time Cartwright committed his burglary offenses, Tennessee defined first-degree burglary as "the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging. . . by night, with intent to commit a felony." Tenn. Code Ann. § 39-3-401 (1980). In a nearly identical fashion, second-degree burglary was defined as "the breaking and entering into a dwelling house or any house, building, room or rooms therein used and occupied by any person or persons as a dwelling place or lodging. . . by day, with intent to commit a felony." Tenn. Code Ann. § 39-3-403 (1980).

Each of these definitions, differing only in whether the offense is committed by day or by night, contains the elements of generic burglary, and Cartwright's convictions for first-degree burglary and second-degree burglary qualify as predicate offenses under the ACCA. *United States v. Jones*, 673 F.3d 497, 505 (6th Cir. 2012) (holding pre-1989 Tennessee second-degree burglary, which occurred by day but was otherwise identical to first-degree burglary, qualifies categorically as generic burglary and is a violent felony under the enumerated-offense clause); *see also Taylor*, 495 U.S. at 592-93 (rejecting the suggestion that generic burglaries are limited to those that occur at night).

However, Cartwright's conviction for third-degree burglary under Tennessee law no longer qualifies as a predicate offense under the ACCA. *See Cradler v. United States*, 891 F.3d 659, 671 (6th Cir. 2018) (holding Tennessee's third-degree burglary statute, as interpreted by the Tennessee Supreme Court, "include[s] offense conduct . . . that lies outside the narrower definition of generic burglary").

B. **Felonious escape**

Cartwright has two prior convictions for escape, but these offenses no longer qualify as violent felonies, as they would have only qualified as such under the now-void residual clause.

5

*See United States v. Covington*, 738 F.3d 759, 764 (6th Cir. 2014) (noting that "only the residual clause can potentially bring Covington's conviction for [Michigan] prison escape within the definition of a crime of violence"); *United States v. Harris*, 165 F.3d 1062, 1067-68 (6th Cir. 1999) (holding 1998 conviction for violating former Tenn. Code Ann. § 39-5-706 (escape from a workhouse or jail) was a crime of violence under the residual clause of the United States Sentencing Guidelines); *see also United States v. Houston*, 187 F.3d 593, 594 (6th Cir. 1999) (holding Tennessee escape conviction qualifies as violent felony under ACCA's residual clause).

**C. Incest**

The Tennessee statute under which Cartwright was convicted prohibits "sexual penetration" with a person, knowing the person is a parent, child, grandparent, grandchild, uncle, aunt, nephew, niece, stepparent, stepchild, adoptive parent, adoptive child, brother, or sister. Tenn. Code Ann. § 39-15-302. Incest is not an enumerated offense, and it does not necessitate the use of physical force. Accordingly, Cartwright's incest conviction cannot serve as an ACCA predicate offense.

**D. Aggravated assault**

At the time Cartwright received his aggravated assault conviction, Tennessee law specified that a person commits aggravated assault if he:

> (1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;
> (2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;
> (3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession; or
> (4) Being the parent or custodian of a child or the custodian of an adult, willfully or knowingly fails or refuses to protect such child or adult from an aggravated assault described in (1), (2), or (3) above.

Tenn. Code Ann. § 39-2-101(b) (1980).

6

Inasmuch as the statute provides four different ways in which aggravated assault may be committed, it is a "divisible" statute. *Descamps v. United States*, 570 U.S. 254, 264 (2013). The first three variants of the offense all involve the use, attempted use, or threatened use of violent physical force against another, and thus qualify as violent felonies under the ACCA's use-of-force clause. *Braden v. United States*, 817 F.3d 926, 933 (6th Cir. 2016) (finding that the knowing/intentional deadly-weapon variant of Tennessee's current aggravated assault statute qualifies as a violent felony under the ACCA's use-of-force clause); *United States v. Harper*, 875 F.3d 329, 330 (6th Cir. 2017) (finding that the reckless deadly-weapon variant of Tennessee's current aggravated assault statute qualifies as a crime of violence under the Guidelines' use-of-force clause); *United States v. Arender*, 560 F. App'x 648, 649 (8th Cir. 2014) (finding that a Tennessee aggravated assault conviction based on the display of a deadly weapon had "as an element the threatened use of physical force"). The fact that a *mens rea* of recklessness is included does not disqualify the offense as a predicate, as the Sixth Circuit has consistently held that "crimes requiring proof of serious physical injury necessarily require proof of violent physical force." *United States v. Verwiebe*, 874 F.3d 261, 262 (6th Cir. 2017) (holding recklessness suffices under the elements clause of the ACCA and the Guidelines).

However, as the Government concedes, the fourth variant of the offense does not necessarily qualify as a violent felony. Under this variant, the defendant can be convicted for passive failure to protect a child or ward from the conduct of another. Such conduct falls short of the force requirement. *See Leocal v. Ashcroft*, 543 U.S. 1, 9-10 (2004) ("use" means "active employment" of force by the defendant). Accordingly, the Court must consider any relevant *Shepard* documents to determine which variant applies to Cartwright's conviction.

Cartwright's PSR references his aggravated assault conviction as an ACCA predicate in a general sense, but it does not include a notation that it was an ACCA predicate when discussing Cartwright's specific criminal history. *Compare* PSR p. 8 ¶ 40 *with* PSR p. 9 ¶¶ 42, 43. The probation officer noted that "additional information regarding this conviction could not be located." PSR p. 8 ¶ 40. However, it is Cartwright's burden to prove by a preponderance of the evidence that he was convicted of the fourth variant of the offense in order to be entitled to relief. *Potter v. United States*, 887 F.3d 785, 787-88 (6th Cir. 2017) ("Potter has the burden to show … that the district court relied on the residual clause or, to be more precise, relied only on the residual clause."); *Packett v. United States*, No. 17-5285, 2018 WL 3100153, at *3 (6th Cir. June 25, 2018) (explaining that a § 2255 petitioner has burden of proving that his prior Tennessee aggravated assault conviction involved non-use-of-force clause qualifying variant of the offense in order to obtain relief under *Johnson*).

Cartwright has produced the 1980 indictment against him for aggravated assault [Doc. 14 p. 17 and 18]. That indictment states that Cartwright "unlawfully, feloniously, and willfully and knowingly did cause bodily injury to [the victim] with a deadly weapon[.]" [*Id*. at 18]. Therefore, Cartwright's aggravated assault conviction was not based on the fourth variant of the statute, but rather, on Cartwright's intentional conduct with a deadly weapon. Accordingly, the conviction qualifies as a third ACCA predicate.

Cartwright nonetheless argues that the record is insufficient to establish that his 1980 aggravated assault and first-degree burglary offenses occurred on occasions different from one another, as required by the ACCA to meet the requirements for classification as an armed career criminal. 18 U.S.C. § 924(e)(1) (requiring predicate offenses to have been committed "on occasions different from one another").

Cartwright argues that as the time and place of his aggravated assault and first-degree burglaries were not elements of those offenses, it would be improper to infer that he admitted either the time or the place of such offenses, and therefore, the Government failed to establish that he committed the offenses on occasions different from one another. *See United States v. King*, 853 F.3d 267, 269, 279 (6th Cir. 2017) (noting no *Shepard*-approved evidence showed offenses charged in the case did not happen at same time in same place). Cartwright maintains that the Government cannot produce any *Shepard* documents to establish the dates on which the crimes were committed, much less that the offenses were committed on separate occasions. Cartwright argues that when faced with such ambiguity, the rule of lenity requires the interpretation to be in favor of the defendant. *See, e.g., United States v. Santos*, 553 U.S. 507, 514 (2008) (citing *United States v. Gradwell*, 243 U.S. 476, 485 (1917)).

To determine whether offenses "are separate from each other," a court asks 1) whether "it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins," 2) whether "it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense," or 3) whether "the offenses are committed in different residences or business locations." *United States v. Hill*, 440 F.3d 292, 297–98 (6th Cir. 2006). The Sixth Circuit has determined that "[o]ffenses are separate if they meet *any* of these three tests." *United States v. Jones*, 673 F.3d 497, 503 (6th Cir. 2012) (emphasis in original).

Here, the indictment states that Cartwright – along with two other co-defendants - assaulted Gerald Ledford on an unspecified date in October 1980, injuring him with a lug wrench [Doc. 14 p. 18]. His first-degree burglary indictment states that he – along with a different co-defendant - broke into the home of Daniel Epperson at night on October 6, 1980 [Doc. 14 p. 22]. Therefore,

9

Cartwright engaged in two different crimes with two different victims and involving a different co-defendant in each crime. Logic suggests that they occurred on different occasions. Therefore, the Court finds that Cartwright has failed to demonstrate that he is entitled to relief as to this claim.

## IV. MOTIONS

Cartwright's motions to amend and/or supplement his § 2255 motion will be granted. His § 2255 motion, his motion for a show cause order, and his motion for habeas bail [Doc. 210 in No. 1:04-CR-33] will be denied.

## V. CERTIFICATE OF APPEALABILITY

When considering a § 2255 motion, this Court must "issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant." Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts. Cartwright must obtain a COA before he may appeal the denial of his § 2255 motion. 28 U.S.C. § 2253(c)(1)(B). A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For cases rejected on their merits, a movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" to warrant a COA. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). To obtain a COA on a claim that has been rejected on procedural grounds, a movant must demonstrate "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*. Based on the *Slack* criteria, the Court finds that a COA should be granted as to Cartwright's claim that the Government failed to prove his aggravated assault and first-degree burglary convictions occurred on different occasions. A COA will be denied in all other respects.

## VI. CONCLUSION

Cartwright has three qualifying predicate offenses to be qualified as a career offender under the ACCA: his first and second-degree burglary convictions and his aggravated assault conviction. His motions to supplement his § 2255 motion [Docs. 192, 198, and 208 in No. 1:04-CR-33; Docs. 3, 6, and 15 in 1:16-CV-517] will be **GRANTED**. Cartwright's § 2255 motion [Doc. 193 in 1:04-CR-33; Doc. 1 in 1:16-CV-517] will be **DENIED**. A COA will be **GRANTED** solely as to Cartwright's claim that he is not properly an ACCA offender because the Government failed to prove his aggravated assault and first-degree burglary convictions occurred on different occasions. Cartwright's motions for a show cause order [Doc. 17 in 1:16-CV-517] and for habeas bail [Doc. 210 in No. 1:04-CR-33] will be **DENIED**. There being no remaining issues, the Clerk of Court is **DIRECTED** to close the civil case.

**An appropriate Order will enter.**

**/s/**
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**